UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:10-CV-98

**KATHY CURTIS**                                                                              **PLAINTIFF**

v.

**KANSAS CITY LIFE INSURANCE COMPANY**                                        **DEFENDANT**

**MEMORANDUM OPINION**

This administrative review is before the Court upon Plaintiff's Brief (Docket #10). Defendant has responded (Docket #13). Plaintiff has replied (Docket #14). Defendant has filed a sur-reply (Docket #17). The Court has reviewed the administrative record (Docket #9). This matter is now ripe for adjudication. For the following reasons, Plaintiff's claim is DENIED.

**BACKGROUND**

Plaintiff Kathy Curtis became an employee of Fredonia Valley Bank ("Fredonia") on January 2, 2001. Administrative Record ("AR") at 488. Her last day of work was May 5, 2007. AR at 488. As a full-time employee,[1] Plaintiff was eligible to receive benefits from the Group Long Term Disability Insurance Policy ("the Policy") provided by Fredonia to its employees. AR at 1-21. Defendant Kansas City Life Insurance Company ("KCL") is the insurer of the Policy. AR at 1-2. The Policy is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").

Plaintiff became disabled on May 6, 2007. AR at 25. She was fifty years old at the time and could no longer work in her position as a bank teller because of back pain that radiated down her legs. AR at 25, 213. Plaintiff primarily saw four doctors over the course of her treatment:

---

[1] For eligibility purposes, a full-time employee must be a United States citizen or resident who works at least 30 hours per week. AR at 10.

Dr. Gregory Lanford, a neurosurgeon; Dr. Daniel Burrus, an orthopedic surgeon; Dr. Robert T. Cochran, Jr., who specializes in neurology and internal medicine; and Dr. Joseph Cheng, a neurosurgeon. AR at 56, 160, 179, 266. Plaintiff was diagnosed with "low back pain, chronic pain, depression, cognitive issues, neck/left arm pain, and coccydynia." AR at 80, 90. On June 25, 2007, Plaintiff had surgery to correct the problems in her lower back. AR at 523. Dr. Lanford performed a "[d]ecompressive laminectomy L2-3 with intradural exploration removal of Schwannoma using operative microscopes." AR at 523. Plaintiff continued to report coccygeal pain following the surgery. AR at 213. Dr. Burrus performed a coccygectomy, or resection of her coccyx, on September 8, 2008. AR at 213, 320. She continues to be treated for chronic pain. AR at 160.

Plaintiff's application for disability benefits was approved and she received monthly long term disability payments of $866.67 from June 5, 2007, to June 5, 2009. AR at 25, 197, 450. Under the terms of the Policy, Plaintiff was entitled to receive benefits for a period of 24 months if she could not perform the "material and substantial duties" of her occupation on a full-time basis due to disability "caused by injury or sickness." AR at 12. After that 24 month period, Plaintiff could continue to receive benefits if "unable to perform with reasonable continuity all of the material and substantial duties of your own or *any other occupation* for which you are qualified or become reasonably fitted by training, education, experience, age and physical and mental capacity." AR at 13 (emphasis added).

The independent claims administrator for KCL is North American Benefits Company ("NABC"). *See* AR at 450. On December 9, 2008, NABC sent a letter to Plaintiff requesting information from her to determine if she would remain eligible for benefits beyond the 24 month

period. AR at 270. Plaintiff provided the requested information. AR at 261-69. Dr. Vernon Mark reviewed Plaintiff's file on May 26, 2009, and concluded that Plaintiff "could perform sedentary tasks full time with the aid of an ergonomic chair and inflatable 'donut' ring (if desired)." AR at 213-17. Dr. Mark made several attempts during his review to reach Plaintiff's physician, Dr. Gregory Lanford, but was unsuccessful. AR at 216. Accordingly, NABC sent a summary of Dr. Mark's analysis to Dr. Lanford for review. AR at 222. Dr. Lanford responded "Ms. Curtis continues to complain of significant pain despite ergonomic considerations and has even had a coccygeal resection." AR at 224.

NABC then conducted an Employability Analysis. AR at 202-09. Based upon Plaintiff's prior work as a bank teller, loan clerk, kindergarten aide and secretary, the functional capabilities described by Dr. Vernon Mark, and the reasonable assumptions that Plaintiff's work functions included computing, serving and taking instructions, NABC determined that Plaintiff could perform five occupations with her current restrictions.[2] AR at 203. Based upon this analysis and Dr. Mark's review, NABC concluded that Plaintiff was no longer eligible for long term disability benefits under the Policy. AR at 197-99.

Plaintiff appealed the decision on December 4, 2009. AR at 145. In support of her argument, Plaintiff submitted a favorable Social Security Administration ("SSA") disability decision from ALJ Marci P. Eaton, issued on September 22, 2009. AR at 145, 150-56. Plaintiff also submitted additional documentation from her medical records and statements from treating physicians. AR at 145. The Appeal Unit acknowledged receipt of Plaintiff's appeal by letter

---

[2] These occupations include: (1) Letter of Credit Clerk; (2) Brokerage Clerk 1; (3) Reserves Clerk; (4) Referral Clerk, Temporary Help Agency; and (5) Information Clerk. AR at 198.

dated December 14, 2009. AR at 138. On January 19, 2010, NABC sent a letter to Plaintiff's counsel informing him that NABC would be unable to make an appeal decision within the 45 day time period and an extension was necessary. AR at 122.

Plaintiff's file was reviewed by two physicians with the University Disability Consortium: Gerry Smith, M.D., and Jacquelyn Olander, Ph.D. AR at 80-98. Dr. Smith reviewed the information in the file, attempted to contact Plaintiff's treating physicians, and concluded that "the claimant is not shown to be precluded from performing full-time work activities at the sedentary level, if allowed to change positions for comfort." AR at 89. Dr. Olander, a consulting neuropsychologist, determined that Plaintiff's file "does not provide sufficient data that indicates she is experiencing significant psychological or cognitive impairment that negatively impacts her functionality as of 6/5/09." AR at 98.

NABC denied Plaintiff's appeal on February 24, 2010, finding that termination of benefits was appropriate. AR at 54-57. Although NABC acknowledged the favorable SSA decision, it noted that the SSA and KCL "use different definitions of disability and different criteria for awarding benefits." AR at 57. NABC indicated the decision was final and noted Plaintiff's right to file a civil suit under ERISA. AR at 57.

Plaintiff filed suit in Caldwell Circuit Court on May 3, 2010. Notice of Removal, DN 1-2, p. 1. Defendant removed the case to this Court on May 26, 2010. DN 1-1, p. 1. Plaintiff asks the Court to award her benefits of $893.54 per month from June 7, 2009, until present and continuing, as well as reasonable attorneys' fees and costs under 29 U.S.C. § 1132(g)(1). Reply Brief, DN 14, p. 5. In the alternative, Plaintiff seeks a remand for a full and fair review according to the Court's directives. *Id.* at 6.

4

**STANDARD**

To begin with, the Court recognizes that "in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998). The administrative record includes all documentation submitted during the administrative appeals process "because this information was necessarily considered by the plan administrator in evaluating the merits of the claimant's appeal." *Kalish v. Liberty Mut.*, 419 F.3d 501, 511 (6th Cir. 2005).

Generally, courts "review a plan administrator's denial of ERISA benefits *de novo*." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, when "a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious." *Id.* "The arbitrary and capricious standard is the least demanding form of judicial review and is met when it is possible to 'offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Admin. Comm. of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson*, 164 F.3d 981, 989 (6th Cir. 1999) (citation omitted). "Consequently, a decision will be upheld 'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citations omitted).

Still, while the arbitrary and capricious standard is deferential, it is not "'without some teeth.'" *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (citation omitted). A court's obligation to review the administrative record "inherently includes some review of the

quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id.* As the Sixth Circuit has noted, without such a review "courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence– no matter how obscure or untrustworthy– to support a denial of a claim for ERISA benefits." *Id.*

## DISCUSSION

The parties agree that "arbitrary and capricious" is the appropriate standard of review. Plaintiff argues that Defendant's decision was arbitrary and capricious because (1) the Policy is both administered and paid out by Defendant; (2) the reviewing physicians conducted a file review only; (3) the reviewing physicians implicitly made credibility determinations based upon Plaintiff's subjective complaints without a physical examination; and (4) Defendant failed to explain why it took a position contrary to that of the SSA.

### I.     Conflict of Interest

Plaintiff's initial brief argues that there is an inherent conflict of interest because Defendant determines and pays for benefits. The Court must consider potential conflicts of interest, including situations where the plan administrator is also the payer of benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007). A conflict of interest is just one factor considered in the Court's determination; it does not change the standard of review. *Glenn,* 554 U.S. at 116-17. Defendant asserts, however, that no conflict of interest exists because it only pays claims. An independent claims administrator, North American Benefits Company, is responsible for evaluating claims filed under the Policy. Plaintiff does not respond to this argument in its reply brief.

Accordingly, the Court concludes that Plaintiff has abandoned this argument.

**II.     File Review**

Next, Plaintiff argues that the Court must consider whether the administrator conducts a file review only. Plaintiff's file was separately reviewed by Dr. Vernon Mark, Dr. Gerry Smith, and Dr. Jacquelyn Olander.

First, the Court notes that conducting a file review only is not necessarily arbitrary and capricious. *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 296 (6th Cir. 2005) ("[W]e find nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination."). It is, however, a factor to be considered in the Court's determination. *Smith v. Continental Cas. Co.*, 450 F.3d 253, 263 (6th Cir. 2006). "[T]he failure to conduct a physical examination – especially where the right to do so is specifically reserved in the plan – may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert*, 409 F.3d at 295. This may include benefits determinations which make credibility assessments based upon subjective complaints in the claims file instead of a physical examination. *See Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 263-64 (6th Cir. 2006) (discussing *Calvert*).

Defendant's right to conduct a physical examination is explicitly provided for in the Policy. A physical examination of Plaintiff was never requested. Therefore, the Court considers this factor in its analysis. The extent to which the file review "raises questions about the thoroughness and accuracy of the benefits determination," is discussed *infra*.

**III.    Credibility Determinations**

Plaintiff argues that NABC "implicitly made credibility determinations based upon Ms.

Curtis' subjective complaints of pain." Pl. Brief, DN 10, p. 6. Plaintiff cites to portions of Dr. Smith's review. Dr. Smith states:

> Dr. Cochran dictated a brief note and within this note is the following statement–she is currently disabled on account of her back pain. I would like to point out at this time the following reminder–pain complaints are subjective. If function is not limited then pain is not incapacitating. A self-reported symptom does not in and of itself justify a restriction. For example, many individuals work in spite of pain.
>
> . . .
>
> My review of the information indicates that Ms. Curtis does indeed have pain[.] Pain complaints are documented by multiple physicians. My review of the records indicates that documented physical exam findings are overall unimpressive and certainly do not support complete inability to work.

AR at 84-85, 88.

In cases that have found credibility determinations to speak towards arbitrary and capricious action, the reports have contained statements describing the plaintiff as "exaggerating" and "embellishing," or making "subjective exaggerations," without a physical examination of the plaintiff. *See, e.g.*, *Bennet v. Kemper Nat. Services, Inc.*, 514 F.3d 547, 555 (6th Cir. 2008); *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296-97 (6th Cir. 2005). In this case, however, Dr. Smith never indicated that he did not believe Plaintiff's complaints of pain. Nor did he allege that he thought she was exaggerating. Instead, Dr. Smith merely notes that complaints of pain are subjective and he believes Plaintiff does indeed have pain. Accordingly, the Court finds that Dr. Smith's statements do not support a finding that the denial of benefits was arbitrary and capricious.

### IV.   Social Security Award

Plaintiff argues that Defendant's cursory differentiation of the SSA's decision weighs

heavily in finding that the claims decision was arbitrary and capricious. While a Social Security Administration disability determination "does not, standing alone, require the conclusion that [a] denial of benefits was arbitrary and capricious," it is a factor to be considered by the Court when determining if Defendant's contrary conclusion was arbitrary and capricious. *Calvert*, 409 F.3d at 295. In addition,

> if the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary and capricious.

*Bennett*, 514 F.3d at 554 (citing *Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006)).

Here, there is no evidence that Defendant encouraged Plaintiff to apply for Social Security disability payments. Thus, the test set forth in *Bennett* does not apply. Failure to even mention an SSA determination in a reviewing doctor's file review, however, has been held to "raise[ ] serious questions about the thoroughness and accuracy of these file reviews." *Id.* at 555; *Calvert*, 409 F.3d at 296 (noting that the reviewing doctor did not mention the SSA disability determination and may not even have been aware of it). In this case, there is no question that a copy of the SSA determination was provided to NABC by Plaintiff's attorney prior to the two file reviews on appeal. However, neither Dr. Smith nor Dr. Olander mentioned the SSA determination or noted that it was available to them for review. It appears the decision was not provided to either doctor, despite the fact that Plaintiff testified at the SSA hearing and the decision provides recent information as to Plaintiff's condition. The only time the SSA determination is addressed is within the appeal denial letter, which merely indicates that the SSA and KCL use different definitions and criteria for determining disability.

9

## V.     Application of the Arbitrary and Capricious Standard in this Case

Plaintiff became disabled on May 6, 2007, and was no longer able to perform her job duties at Fredonia. She suffered from "multiple medical issues, including an intradural tumor in the upper lumbar spine . . . as well as chronic coccydynia . . . ." AR at 171, 185. Doctors treated Plaintiff by conducting a decompressive laminectomy and coccygeal resection. AR at 158. This "myriad of lumbosacral problems" have caused her significant soft tissue pain. AR at 158. She continues to have "persistent coccygeal pain." AR at 179. Her doctor's restrictions include "no lifting greater than 10 pounds as well as no repetitive bending, lifting, and stooping. No prolonged sitting or standing." AR at 162. Dr. Lanford believes Plaintiff cannot work an eight-hour day and "is disabled from gainful employment." AR at 162. The SSA agreed with Dr. Lanford's opinion and determined that Plaintiff is totally disabled. AR at 146-157. Plaintiff is described as a "prototypic pain patient" who also suffers from depression. AR at 163.

Despite this medical history, Defendant determined that Plaintiff is not entitled to disability benefits. Dr. Vernon Mark concluded that Plaintiff could work in a full time sedentary position if she used an ergonomic chair and an inflated ring to keep pressure off her coccyx. AR at 217. He based this determination on her medical records indicating she had two successful surgeries and her only remaining complaint is coccygeal pain, which is subjective. AR at 217. Dr. Gerry Smith also concluded that Plaintiff is not precluded from full-time sedentary work, if allowed to change positions for comfort. AR at 89. Dr. Smith based his opinion on the medical records and a phone call to Dr. Lanford's office in which Dr. Lanford indicated that Plaintiff could work on a sedentary level if she changed positions every one-half hour. AR at 88. Dr. Smith also noted that while Plaintiff does indeed have pain, the objective physical exam results

10

are "overall unimpressive and certainly do not support complete inability to work." AR at 88. Finally, Dr. Jacquelyn Olander reviewed Plaintiff's medical files and spoke with Dr. Cochran by telephone, who described Plaintiff as psychologically and cognitively impaired. AR at 90-98. Noting that Plaintiff's medical records "described her with unremarkable mental status and neurological exams," Dr. Olander determined that there was insufficient data to indicate that Plaintiff "is experiencing significant psychological or cognitive impairment that negatively impacts her functionality as of 6/5/09." AR at 98.

The determination that Plaintiff does not qualify for long term disability benefits was essentially based upon two issues: (1) Plaintiff's functionality, as addressed by Drs. Mark, Smith, and Olander, and (2) how that functionality affected Plaintiff's ability to perform any occupation, as evaluated by an Employability Analysis. As to Plaintiff's functionality, the reviewing physicians determined that Plaintiff could perform sedentary work so long as she used ergonomic devices and was permitted to change positions every one-half hour. Dr. Olander also determined that Plaintiff is not experiencing significant psychological or cognitive impairment that negatively impacts her functionality. All three reviewing doctors reviewed Plaintiff's medical file in its entirety. In addition, Plaintiff's treating physician, Dr. Lanford, indicated to Dr. Smith that Plaintiff could work on a sedentary level if she changed positions every one-half hour. The Court finds that these determinations were based upon "a deliberate principled reasoning process" and "supported by substantial evidence." *Evans*, 434 F.3d at 875.

Plaintiff raises one issue concerning the Employability Analysis. Plaintiff believes it was arbitrary and capricious for Defendant to add "computing" as a skill. According to the Employability Analysis:

> Computing was changed to "yes" as it is reasonable Ms. Curtis was demonstrating
> the work functions as a bank teller, loan clerk, teacher aide and secretarial. For
> example Ms. Curtis would need to compute the transactions prior to bank deposit.

AR at 203. The Court finds that adding computing to Plaintiff's work functions does not indicate that the decision was arbitrary and capricious. The addition was adequately explained and falls within the constraints of the "Total Disability" definition stating "any other occupation for which you are or become reasonably fitted by training, education, experience, age and physical and mental capacity." AR at 13. It is reasonable to believe that Plaintiff's work experience in financial institutions would result in her being reasonably fitted for an occupation which involves computing.[3]

Two factors noted previously weigh in favor of finding that the denial of Plaintiff's claim was arbitrary and capricious: (1) that Defendant conducted a file review only and (2) Defendant's reviewing physicians did not consider the SSA's favorable decision. Both of these issues weigh on the adequacy of the review. The Court finds, however, that a file review was reasonable in this case. Although Defendant had the option to conduct a physical examination, it was not required to do so. Instead, three reviewing physicians independently examined Plaintiff's medical records. Further, all three doctors attempted to contact and converse with

---

[3]Plaintiff also argues that, in applying the definition of "Total Disability or Totally Disabled" to Plaintiff's case, Defendant improperly defined "on a full-time basis" to mean a 30-hour work week. Although Defendant's response brief classifies full-time as a 30-hour workweek, the actual letter sent to Plaintiff denying her claim indicates otherwise, noting:

> We have concluded from the combination of all the medical information in your
> file that you are capable of sustaining a Sedentary Level of work for an eight (8)
> hour day equating to a forty (40) hour workweek.

AR at 198. As a forty hour workweek was used in NABC's analysis, Plaintiff's argument is moot.

12

Plaintiff's physicians. Dr. Smith was able to speak with Dr. Lanford's assistant and Dr. Olander spoke to Dr. Cochran. Finally, the Court believes there is substantial evidence in Plaintiff's medical records to support the reasoned conclusions of the reviewing physicians.

Defendant addressed the SSA decision in its letter denying Plaintiff's appeal, noting that the SSA uses a different definition of disability and different criteria for awarding benefits. The SSA defines disability as

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

AR at 150. The SSA uses a five-step evaluation process in its determination of benefits, is required to give "controlling weight" to the opinion of the treating physician, and must follow the directives of several federal regulations and prior Social Security Rulings.. AR at 150-154. Thus, the process differs substantially from an insurance company's claims review process. The record indicates, however, that NABC's review of the SSA decision was brief and the decision was not provided to the reviewing physicians. Still, the Court finds that NABC's cursory differentiation of the SSA decision, standing alone, is insufficient to find that the denial of Plaintiff's claim was arbitrary and capricious.

If the standard of review was *de novo*, the Court would be inclined to find for Plaintiff. However, that is not the applicable standard. The arbitrary and capricious standard and existing case law indicate to the Court that Plaintiff's claim should be denied. Although the Court does not necessarily like this result, the Court believes it has reached the correct decision applying the law applicable to this case.

## CONCLUSION

For the foregoing reasons, Plaintiff's claim for relief is DENIED and this matter is DISMISSED.

An appropriate order shall issue.